UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| SHAMECA BURT, )<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>TENNESSEE CHILD SUPPORT DIVISION )<br>DEPARTMENT OF HUMAN SERVICES, )<br>BARBARA BROERSMA, COMMISSIONER )<br>DESIGNEE; BISHAKHA VAN-VORIS, )<br>FISCAL DIRECTOR; AMANDA TONKIN, )<br>HEARING OFFICER; DEBRA BRADLEY, )<br>DIVISION OF APPEALS AND HEARINGS )<br>LEGAL ASSISTANT; VICKY WILMOTH, )<br>DHS EMPLOYEES )<br>)<br>Defendants. )<br>) | No. 1:18-cv-220-TRM-SKL |

## REPORT AND RECOMMENDATION

This case is filed pro se and without payment of filing fees by Plaintiff Shameca Burt ("Plaintiff"). Plaintiff claims Defendants have illegally garnished her Social Security checks and settlement proceeds she received following a car accident to pay for child support which Plaintiff believes she did not owe. Plaintiff filed her original complaint on September 20, 2018, naming the Child Support Division of the Department of Human Services ("DHS") as the only defendant [Doc. 1]. On October 17, 2018, the undersigned entered an order outlining clear deficiencies in the complaint and requiring Plaintiff to file an amended complaint within 14 days [Doc. 8]. Plaintiff was warned that any failure to state a claim in a timely-filed amended complaint would result in the dismissal of this action in accordance with 28 U.S.C. § 1915(e)(2), and the Clerk was

ordered to withhold the issuance of any summons pending review of Plaintiff's amended complaint [*id.* at Page ID # 22-23]. Plaintiff timely filed her first amended complaint on October 31, 2018 [Doc. 9]. In addition to DHS, the amended complaint names six individual defendants: Commissioner Designee Barbara Broersma, Fiscal Director Bishakha Van-Voris, Hearing Officer Amanda Tonkin, DHS legal assistant Debra Bradley, and DHS caseworker Vicky Wilmoth.[1]

Having reviewed the amended complaint as required by 28 U.S.C. § 1915(e)(2), and for the following reasons, I **RECOMMEND** this action be **DISMISSED** prior to the issuance of any summons.

## I. BACKGROUND

The amended complaint adds much more detail regarding the factual basis for Plaintiff's claims. Specifically, Plaintiff's parental rights were terminated as to all nine of her children between February 2006 and May 2009 [Doc. 9 at Page ID # 25, ¶¶ 1-3]. After the children were removed from Plaintiff's home, but before Plaintiff's parental rights were terminated, Plaintiff was required to pay child support to DHS. *See* Tenn. Code Ann. § 36-1-113(*l*)(1). In June 2011, Plaintiff began receiving Social Security Disability Insurance benefits ("DIB") [Doc. 9 at Page ID # 25, ¶ 5]. At some point she discovered her DIB checks were being or had been garnished to pay the child support [*id.*]. In July 2016, Plaintiff also received nearly $9,000 in settlement of claims she had following a car accident. Plaintiff contends the entire check was initially garnished for child support, but eventually she received a partial refund [*id.* at Page ID # 26, ¶¶ 7-12]. Though she appears to concede she owed at least some arrearage when she began to receive DIB and when she received the settlement, it is clear Plaintiff believes DHS continued to assess monthly child

---

[1] These are the titles Plaintiff identified for each defendant in her amended complaint.

support payments against her even after her parental rights were terminated, and that her income was garnished to satisfy these improper assessments as well as any pre-termination arrearage. DHS contracts with a private company called Maximus, Inc. ("Maximus"), to assist DHS in the collection of child support.[2] Accordingly, Plaintiff's amended complaint references Maximus at several points, although she does not include any Maximus employees as defendants.

In 2017, Plaintiff began making efforts to get some of her garnished money back by contacting various officials at DHS and Maximus. In November and December, she contacted "a host of caseworkers" at DHS, including Defendant Vicky Wilmoth. In response, someone at DHS asked Plaintiff "to fax documents showing where [t]ermination of parental rights existed and garnishment of social security disability to absolve [sic] the matters." [Doc. 9 at Page ID # 29, ¶ 33]. In December, Plaintiff contacted Defendant Bishakha Van-Voris specifically regarding the garnishment of her settlement check. Plaintiff claims Defendant Van-Voris was not aware Plaintiff's parental rights had been terminated "or why collection continued to accrue." After the conversation, Defendant Van-Voris mailed Plaintiff a copy of the settlement check, "disregarding over collection of child support payments." [*Id.* ¶ 32]. Plaintiff then contacted employees at Maximus, as well as the governor's office and the office of Representative JoAnne Favors [*id.* at Page ID # 28 ¶¶ 25-28].

On January 8, 2018, Plaintiff was notified by letter that she needed to request a hearing before DHS. Plaintiff immediately contacted Defendant Debra Bradley [*id.* at Page ID # 29, ¶ 34]. Plaintiff's request for a hearing was initially denied on January 18, 2018, in a letter signed by Defendant Barbara Broersma [*id.* ¶ 35]. Plaintiff continued to communicate with Defendant

---

[2] *See* Hamilton County, Tennessee, Juvenile Court – Child Support Division, http://www.hamiltontn.gov/courts/JuvenileClerk/childsupport/Default.aspx, last accessed Nov. 6, 2018.

Bradley, and eventually a telephonic hearing was held before Defendant Amanda Tonkin (DHS hearing officer) on the morning April 4, 2018 [*id.* at Page ID # 29-30, ¶¶ 36, 38]. Plaintiff claims the first hearing was actually conducted on March 20, 2018, but she was not aware of that hearing and did not participate. As for the April 4 hearing, Plaintiff claims Defendant Tonkin abruptly disconnected her in the morning, and the hearing was continued until later that afternoon despite the fact that Plaintiff allegedly informed Defendant Bradley she wanted to put the hearing off so her attorney could attend [*id.* at Page ID # 30, ¶¶ 38-41]. In May 2018, Defendant Tonkin issued an order. The wording of the amended complaint is confusing, but it appears Plaintiff believes Defendant Tonkin found Plaintiff owed $10,086.89 in child support [*id.* at Page ID # 31, ¶ 44]. On September 28, 2018, Plaintiff received another letter from Defendant Broersma indicating Plaintiff had exhausted her administrative remedies with DHS [*id.* ¶ 45]. Plaintiff had already initiated the instant lawsuit eight days prior [Doc. 1].

**II.   STANDARDS**

As explained in the prior order, the court is responsible for screening all actions filed by plaintiffs, including non-prisoners seeking *in forma pauperis* status, and dismissing any action or portion thereof which is frivolous or malicious, fails to state a claim for which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. *McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997) (citing 28 U.S.C. § 1915(e)(2)) (other citations omitted), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007); *Johns v. Maxey*, No. 2:07-CV-238, 2008 WL 4442467, at *1 (E.D. Tenn. Sept. 25, 2008) (Greer, J.) (citations omitted). The standard required by § 1915(e)(2) to properly state a claim for which relief can be granted is the same standard required by Federal Rule of Civil Procedure 12(b)(6). *Brand v. Motley*, 526 F.3d 921, 924 (6th Cir. 2008); *accord Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007) (citations omitted). The pleadings of pro se litigants must be liberally construed and "held to less stringent

standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Nevertheless, pro se plaintiffs must abide by "basic pleading standards," and the role of the court is not to "conjure allegations on a litigant's behalf." *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004) (internal quotation marks and citations omitted).

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," otherwise it is subject to dismissal under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." A complaint need not state "detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, it must contain more than mere "labels and conclusions, . . . a formulaic recitation of the elements," or "naked assertions . . . without further factual enhancement." *Id.* at 555, 557 (citations omitted). In order to survive a motion to dismiss, a complaint must contain sufficient facts to "state a claim to relief that is plausible on its face." *Id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556). Stated differently, "the court must be able to draw a 'reasonable inference that the defendant is liable for the misconduct alleged.'" *KSR Int'l Co. v. Delphi Auto. Sys.,* 523 F. App'x 357, 358-59 (6th Cir. 2013) (quoting *Iqbal,* 556 U.S. at 678).

### III. ANALYSIS

Plaintiff's amended complaint is broken into three "causes of action," all asserted under 42 U.S.C. § 1983 and the 14th Amendment to the United States Constitution. Under a section titled, "General Allegations," Plaintiff also claims Defendants violated 42 U.S.C. § 1985 [Doc. 9 at Page ID # 32-33, ¶ 5]. As mentioned, the thrust of her claims appears to be that Defendants continued to allow child support to accrue against her even after her parental rights were

terminated, and then garnished her income to satisfy the debts. She argues this alleged over-collection, as well as the way DHS allegedly mishandled her complaints once she brought the issue to the attention of officials, violated her right to due process and equal protection of the law. Liberally construed, she names each of the defendants in their official and individual capacities [*see id.* at Page ID # 24 ("This is a case alleging Defendants individually and together and or, in their official capacity, jointly committed intentional gross negligence and or, as a matter of unconstitutional policy, aided, abetted and violated Plaintiff's rights . . . .")].

In her first cause of action, Plaintiff "charges Defendants with gross negligence in failing to fulfill their responsibilities and duties required by state law and in so failing, caused and failed to prevent" violations of Plaintiff's 14th Amendment due process rights [*id.* at Page ID # 33-34, ¶¶ 12-19]. In her second cause of action, Plaintiff claims "Defendants . . . aided and abetted, constitutional rights violations," by forcing Plaintiff to "endure more than one year of unnecessary litigation," which Plaintiff claims cost her money and caused her emotional distress [*id.* at Page ID # 35-36, ¶¶ 22-28]. In her third cause of action, Plaintiff claims Defendants discriminated against her and others based on their socioeconomic class and status as non-lawyers, in violation of their right to equal protection of the law [*id.* at Page ID # 36, ¶¶ 29-34]. She seeks an unspecified amount of compensatory and punitive damages [*id.* at Page ID # 35, ¶ 21; Page ID # 37, ¶ 87-88]. She also asks for "appropriate declaratory and injunctive relief" but does not specify what kind of injunction or declaration she is pursuing [*id.* at Page ID # 37, ¶ 85]. Presumably she wants any improperly-garnished money refunded and for the garnishments to stop, if they have not already.

A.  42 U.S.C. § 1983 Claims against DHS and Official-Capacity Claims

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983.

Neither the State of Tennessee nor DHS is considered a "person" that can be sued under § 1983. *See, e.g.*, *Reese v. Indus. Comm'n of Ohio*, 3 F. App'x 340, 342 (6th Cir. 2001) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989)) (other citation omitted); *Payne v. Tenn. Dep't of Human Servs.*, No. W2011-00761-COA-R3-CV, 2012 WL 6115665, at *4 (Tenn. Ct. App. Dec. 10, 2012) (citing *Bowden Bldg. Corp. v. Tenn. Real Estate Comm'n*, 15 S.W.3d 434, 438-39 (Tenn. Ct. App. 1999)) (dismissing § 1983 claim against DHS). States and state agencies in Tennessee are immune from suit in federal court under the doctrine of sovereign immunity; such suits are barred by the Eleventh Amendment to the United States Constitution.[3] *Oshop v. Tenn. Dep't of Children's Servs.*, No. 3:09-CV-0063, 2009 WL 1651479, at *2-4 (M.D. Tenn.

---

[3] Plaintiff cites an unreported Tennessee Court of Appeals case which also involved over-collection of child support. *State ex rel. Phillips (Bobbitt) v. Phillips*, No. E2012-01957-COA-R3-CV, 2013 WL 1803958 (Tenn. Ct. App. Apr. 30, 2013). In that case, the trial court ordered the state to reimburse the father for the overpayments and the state appealed, arguing the trial court lacked authority for the order under the doctrine of sovereign immunity. The appeals court rejected the state's argument, finding the father was simply seeking return of his property which the state had wrongfully taken. *Id.* at *3-4. This case is distinguishable. Plaintiff brings her claims in federal court under § 1983. "Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Will*, 491 U.S. at 66; *see also Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 99 ("A State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued.").

June 10, 2009) (citations omitted) (sovereign immunity not waived by § 1983 or Tennessee Government Tort Liability Act as to state, state agencies, and state officials); *see also Dubuc v. Mich. Bd. of Law Exam.*, 342 F.3d 610, 615 (6th Cir. 2003) ("In addition to the states themselves, the Eleventh Amendment immunizes departments and agencies of the states."); *Giorgio v. Tenn. Dep't of Human Servs.*, No. 95-6327, 92 F.3d 1185, 1996 WL 447656, at *1 (6th Cir. Aug. 7, 1996) (table) ("The claims against the [Tennessee] DHS are barred by the Eleventh Amendment. The DHS is an arm of the State of Tennessee, and that state has not expressly waived its sovereign immunity. Furthermore, Congress did not disturb the state's Eleventh Amendment immunity when it passed § 1983." (citations omitted)); *Osher v. Jared*, No. 2:08-0031, 2009 WL 857636, at *3 (M.D. Tenn. Mar. 26, 2009). DHS is undoubtedly a state agency under Tennessee law. *See* Tenn. Comp. R. & Regs. 1240-02-04-.01(1)(b) ("The Tennessee Department of Human Services is the authorized *state agency* for the enforcement of the child support program in the State of Tennessee under Title IV-D of the Social Security Act.").

Section 1983 likewise does not authorize suits for damages against state officials in their official capacity. *Oshop*, 2009 WL 1651479, at *4 (citing *Dubuc*, 342 F.3d at 616); *see also Heithcock v. Tenn. Dep't of Children's Servs.*, No. 3:14-CV-2377, 2015 WL 4879107, at *5-6 (M.D. Tenn. Aug. 14, 2015) (dismissing official capacity claims against state agency employees) (citations omitted), *rev'd in part on other grounds and remanded*, No. 15-6236, Order at Doc. 21, p. 5 (6th Cir. Oct. 4, 2016) (unpublished). All of the individually-named defendants are employees of DHS, a state agency. Accordingly, I **FIND** Plaintiff's claims against DHS and her claims for money damages against the individual defendants in their official capacity should be **DISMISSED**.

A suit for prospective injunctive relief only can be maintained against a state official in

their official capacity. *Id.* at *5 (citing *Idaho v. Coeur D'Alene Tribe*, 521 U.S. 261, 269 (1997); *Ex Parte Young*, 209 U.S. 123, 159-60 (1908)). "In order to fall within the *Ex Parte Young* exception [to state sovereign immunity from suit for officials], a claim must seek prospective relief to end a continuing violation of federal law." *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 964 (6th Cir. 2013) (citation omitted) (employee seeking reinstatement falls within exception). Plaintiff does include a vague request for an injunction [Doc. 9 at Page ID # 35, ¶ 21; Page ID # 37, ¶ 85], but this should not save her official-capacity claims. First, she fails to specify the injunctive relief she seeks, despite being given a chance to amend her complaint. Second, and assuming the injunction she seeks is an end to DHS's collection efforts, Plaintiff does not contend that she continues to be charged child support. Even assuming the garnishment for past monthly charges is ongoing (which is not at all clear from the complaint—indeed, the fact that she received a partial refund of her 2016 settlement check suggests the garnishment has stopped), the garnishment is just the method of collection for the past allegedly wrongful charges. A finding that Plaintiff has been overcharged for child support would of course require the garnishment to stop.

Plaintiff also vaguely claims that she "as well as the class and subclass to which she belongs, was and continues to be adversely impacted" by Defendants, who, she claims, "routinely deny due process." [Doc. 9 at Page ID # 36, ¶ 32]. She further claims a 2013 "news report" revealed 55 complaints against Maximus, and that DHS's "practice" is to "not provide equal protection under the law." [*id.* at Page ID # 28, ¶ 27; Page ID # 33, ¶ 11]. But Plaintiff's complaint only includes allegations about *her own past* experience with the DHS child support collection bureaucracy. There is nothing in her complaint that could support an inference that Plaintiff's alleged mistreatment was not unique or that it remains ongoing.

9
Case 1:18-cv-00220-TRM-SKL Document 10 Filed 11/20/18 Page 9 of 16 PageID #: 47

Accordingly, to the extent Plaintiff attempts to seek injunctive relief from any state officials in their official capacities, such request should be **DENIED**, and Plaintiff's claims against the individual defendants in their official capacity for any form of relief should be **DISMISSED**.

### B. 42 U.S.C. § 1983 Individual-Capacity Claims

Construing the amended complaint liberally, Plaintiff also attempts to assert claims against the DHS officials in their individual capacities. In order to hold any defendant liable in their individual capacity, Plaintiff must show the defendant was "personally involved in the alleged constitutional deprivations." *Zdebski v. Schmucker*, 972 F. Supp. 2d 972, 985 (E.D. Mich. 2013) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). In other words, "[p]ersons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior." *Heyerman v. Cty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) (citing *Murphy v. Grenier*, 406 F. App'x 972, 974 (6th Cir. 2011) ("Personal involvement is necessary to establish section 1983 liability."); *Gibson v. Matthews*, 926 F.2d 532, 535 (6th Cir. 1992) (Personal liability "must be based on the actions of that defendant in the situation that the defendant faced, and not based on any problems caused by the errors of others, either defendants or non-defendants.")). A plaintiff "must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law." *Heyerman*, 680 F.3d at 647 (citation omitted). "Supervisory officials are not liable in their individual capacities unless they 'either encouraged the specific incident of misconduct or in some other way directly participated in it.'" *Id.* (quoting *Hays v. Jefferson Cty.*, 668 F.2d 869, 872 (6th Cir. 1982)). "At a minimum, a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the

unconstitutional conduct of the offending officers." *Id.* (quoting *Hays*, 668 F.2d at 874).

The only allegations Plaintiff makes against Defendant Van-Voris are: (1) Plaintiff spoke with her regarding the garnishment of Plaintiff's settlement check in December 2017, (2) Defendant Van-Voris mailed Plaintiff a copy of the settlement check, and (3) Defendant Van-Voris was unaware Plaintiff's parental rights had been terminated and did not know why "collection continued to accrue." [Doc. 9 at Page ID # 29, ¶ 32]. Even construed liberally, these allegations fail to show Defendant Van-Voris caused child support to be improperly assessed against Plaintiff or that Defendant Van-Voris caused Plaintiff to fail to receive appropriate procedural due process. In other words, Plaintiff fails to set forth any facts showing Defendant Van-Voris was responsible for the DHS actions Plaintiff now complains of. Similarly, the only allegation Plaintiff makes against Defendant Wilmoth is that she spoke to Plaintiff in November and/or December 2017. Someone at DHS then requested Plaintiff fax documents showing her parental rights were terminated and her income was garnished [*id.* ¶ 33]. Even construed liberally, these allegations do not show Defendant Wilmoth did anything to cause the alleged over-collection of child support or any other deprivation of Plaintiff's constitutional rights. Accordingly, I **FIND** Plaintiff's individual-capacity claims against Defendant Van-Voris and Defendant Wilmoth should be **DISMISSED**.

Likewise, the only allegations against Defendant Broersma are that she signed two letters on behalf of DHS that were mailed to Plaintiff: the first one stating Plaintiff's initial request for a hearing was denied, or delayed, so that DHS could attempt to resolve the child support issue to Plaintiff's satisfaction within its "customer service unit," without the necessity of a hearing, in accordance with Tennessee Code Annotated § 36-5-1002(a)(11)(A); and the second letter indicating when Plaintiff had exhausted her administrative remedies within DHS at least as to

one of her child support cases [*id.* at Page ID # 29, ¶ 35; Page ID # 31, ¶ 45]. These allegations fail to state any sort of claim that Defendant Broersma was personally involved in, or approved of, any deprivation of Plaintiff's constitutional rights. *See Creusere v. Weaver*, No. 07-5859, 2009 WL 170667, at *7 (6th Cir. Jan. 26, 2009) (delay in holding a hearing "is not a constitutional violation"). Accordingly, I **FIND** Plaintiff's individual-capacity claims against Defendant Broersma should be **DISMISSED**.

Plaintiff includes more detail about her interactions with Defendant Bradley, a DHS legal assistant, and Defendant Tonkin, a DHS hearing officer. As described in the background section of this report and recommendation, Defendant Tonkin conducted a telephonic administrative hearing on April 4, 2018, a date for which Plaintiff claims her counsel could not be present [Doc. 9 at Page ID #29-30, ¶¶ 37-38]. Plaintiff claims that Defendant Tonkin "abruptly disconnected" Plaintiff at around 9:25 a.m., and reconvened the hearing for later in the day [*id.* at Page ID # 30, ¶ 38]. Defendant Tonkin later issued an order finding Plaintiff liable for child support, possibly in the amount of $10,086.89 [*see id.* at Page ID # 31, ¶ 44]. Plaintiff also claims Defendant Tonkin conducted another hearing on an earlier date (March 20, 2018), without notifying Plaintiff [*id.* at Page ID # 29, ¶ 37]. Defendant Bradley's role seems to have been to "create tickets" for Plaintiff's child support cases, to schedule the initial hearing, to talk to Plaintiff in the months leading up to the hearing, and to call Plaintiff to reconvene the April 4 hearing for the afternoon. Construed liberally, Plaintiff's claims against these defendants seem to be that they both deprived her of the right to counsel by refusing to reschedule the hearing for a time when her attorney was available,[4] that Defendant Tonkin cut off Plaintiff's presentation in the morning and reconvened

---

[4] Plaintiff does not specify who actually refused to reschedule the hearing or why it was not rescheduled [*see* Doc. 9 at Page ID # 29-30, ¶ 37].

the hearing later in the day, and that Defendant Tonkin made erroneous factual findings in determining Plaintiff's child support arrearage.

I **FIND** Defendant Tonkin is protected by absolute quasi-judicial immunity from suit for any claim for damages arising from the decision she made concerning the amount of Plaintiff's arrearage, and in scheduling and conducting the hearing.[5] *See Creusere*, 2009 WL 170667, at *6 (citing *Dixon v. Clem*, 492 F.3d 665, 674-75 (6th Cir. 2007)) (The defendant's "actions in conducting an administrative hearing for a state agency were protected by absolute quasi-judicial immunity."). As for any claim against Defendant Bradley for her alleged refusal to reschedule the administrative hearing (if Plaintiff is even making such a claim against Defendant Bradley), I note Defendant Bradley was likely carrying out Defendant Tonkin's wishes. Tenn. Comp. R. & Regs. 1240-05-05-.02(1)(a), (f) ("The hearing official shall have the authority to . . . (a) Schedule and conduct the hearing; . . . (f) Set the time and place for continued hearings . . . ."). Moreover, Plaintiff provides no explanation as to why her attorney could not be present, whether her attorney contacted DCS to request a continuance, how long Plaintiff had known about the hearing, how long of a delay she requested, or the reason given by DHS (if any) for declining to reschedule the hearing. Although I was unable to find any authority concerning the denial of a continuance in the administrative context, I note that in the criminal context, the "denial of a continuance constitutes a constitutional violation only when there is 'an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay' . . . ." *Landrum v.*

---

[5] Plaintiff's complaint does not specify that she seeks injunctive or declaratory relief against Defendant Tonkin or Defendant Bradley. Also, I note that DHS hearing officers are required by regulation to be licensed attorneys, to be impartial, and to have "no direct involvement in the action under consideration prior to . . . the appeal." Tenn. Comp. R. & Regs. 1240-05-02-.01(1)(a). *See, e.g.*, *Shelly v. Johnson*, 849 F.2d 228, 229-30 (6th Cir. 1988) (finding similar characteristics supported finding of quasi-judicial immunity for prison hearing officers).

*Mitchell*, 625 F.3d 905, 927 (6th Cir. 2010) (quoting *Morris v. Slappy*, 461 U.S. 1, 11012 (1983)) (other internal quotation marks and citations omitted). Accordingly, I **FIND** Plaintiff's claims against Defendants Tonkin and Bradley in their individual capacities should be **DISMISSED**.

### C. 42 U.S.C. § 1985 Claims

Section 1985(3)[6] prohibits "private conspiracies intended to prevent persons or classes of persons from the equal exercise of any of their civil rights." *See United Bhd. of Carpenters and Joiners, Local 610 v. Scott*, 463 U.S. 825, 840-411 (1983). "No violation of an independent legal right is required; nor does § 1985(3) require state action or the involvement of the State in any other way." *Scott*, 463 U.S. at 841. To successfully pursue a claim under § 1985(3), a plaintiff must show:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Scott*, 463 U.S. at 828-29 (citation omitted). The United States Court of Appeals for the Sixth Circuit has held that § 1983(5) "only covers conspiracies against: 1) classes who receive heightened protection under the Equal Protection Clause; and 2) 'those individuals who join together as a class for the purpose of asserting certain fundamental rights.'" *Bartell v. Lohiser*, 215 F.3d 550, 560 (6th Cir. 2000) (quoting *Browder v. Tipton*, 630 F.2d 1149, 1150 (6th Cir. 1980)) (other citation omitted). Plaintiff does not claim she was treated differently based on her assertion of certain fundamental rights; rather, she claims she was treated differently due to her "socio-economic status" and membership in "a class of persons who are not engaged in the legal

---

[6] Neither Subsection (1) ("Preventing officer from performing duties"), nor subsection (2) ("Obstructing justice; intimidating party, witness, or juror") of § 1985 is applicable in this case.

profession." [Doc. 9 at Page ID # 36, ¶¶ 30-32].

"A 'class protected by section 1985(3) must possess the characteristics of a discrete and insular minority, such as race, national origin, or gender.'" *Jezowski v. Thompson*, No. 1:16-cv-13242, 2018 WL 3060250, at *6 (E.D. Mich., May 18, 2018) (quoting *Haverstick Enters., Inc. v. Fin. Fed. Credit, Inc.*, 32 F.3d 989, 994 (6th Cir. 1994)). The conspiracy must be "motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus[.]'" *Haverstick*, 32 F.3d at 993-94 (alteration in original) (quoting *Scott*, 463 U.S. at 829). Clearly, neither of the classes Plaintiff identifies qualifies for protection under § 1985(3).

Moreover, "conspiracy claims must be pled with some degree of specificity[,] and . . . vague and conclusory allegations unsupported by material facts will not be sufficient to state a claim." *Curtis v. Breathitt Cty. Fiscal Court*, No. 18-5180, 2018 WL 6012328, at *4 (6th Cir. Nov. 15, 2018) (alteration in original) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)). Plaintiff fails to allege any specific coordinated actions or agreements among the defendants indicating a conspiracy to deprive Plaintiff of her rights.

For these reasons, I **FIND** Plaintiff's § 1985(3) claims should be **DISMISSED**.

## IV. CONCLUSION

Because I conclude that Plaintiff's § 1985 claims have no merit and that Plaintiff may not pursue her § 1983 claims in federal court, I **RECOMMEND**[7] that this action be **DISMISSED** prior to the issuance of any summons. This is not to say that Plaintiff has no recourse in another

---

[7] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

forum if she can prove DHS illegally garnished her income to cover child support which Plaintiff did not owe.

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE